```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
_____
                                   :
EDGAR SANCHEZ,                     :
                                   :
          Petitioner,              :   Civ. No. 20-12041 (NLH)
                                   :
     v.                            :   OPINION
                                   :
WARDEN FCI FAIRTON,                :
                                   :
          Respondent.              :
_____:
```

APPEARANCES:

Edgar Sanchez
11708-265
Fairton
Federal Correctional Institution
P.O. Box 420
Fairton, NJ 08320

    Petitioner Pro se

Philip R. Sellinger, United States Attorney
Kristin L. Vassallo, Assistant United States Attorney
United States Attorney's Office for the District of NJ
970 Broad Street, Suite 700
Newark, NJ 07102

    Counsel for Respondent

HILLMAN, District Judge

    Petitioner Edgar Sanchez, a federal prisoner, filed this petition for writ of habeas corpus under 28 U.S.C. § 2241 asking the Court to order the Bureau of Prisons ("BOP") "to allow petitioner to be transferred to his primary custody, the New York Department of Corrections." ECF No. 1. Respondent United

States opposes the petition. ECF No. 6. Petitioner also requests to supplement the record with documents pertaining to his exhaustion of administrative remedies. ECF Nos. 7-9.

The Court will grant the motions to supplement the record. The habeas petition will be dismissed in part for failure to exhaust administrative remedies and denied in part.

I. BACKGROUND

The Suffolk County Court in New York sentenced Petitioner to a term of 4 years to life on October 30, 1996 for second-degree criminal possession of a controlled substance ("Suffolk County drug charge"). Declaration of Michelle Hassler ("Hassler Dec."), ECF No. 6-4 ¶ 4. Petitioner was released on parole on August 18, 1997. Id. On February 24, 2000, Petitioner received a sentence of 30 months to five years in Schenectady County Court, New York for attempted fourth-degree criminal possession of a controlled substance ("Schenectady drug charge"), to run concurrently with the Suffolk County drug charge. Id. ¶ 5. New York authorities revoked Petitioner's parole on the Suffolk County drug charge on March 24, 2000. Id. ¶ 6. Petitioner "was returned to the New York State Department of Corrections ["NYDOC"] to serve a parole violation sentence and the sentence imposed" for the Schenectady drug charge. Id.

NYDOC granted Petitioner a furlough on October 12, 2000, but Petitioner failed to return on October 19, 2000. Id. ¶ 7.

2

NYDOC issued a warrant for absconding.  Id.  The Schenectady Police Department arrested Petitioner on January 9, 2001 "for New York State Parole violation warrants, along with warrants from the U.S. Marshals Service (USM) and New York State, for Homicide."  Id. ¶ 8.  Petitioner was transferred to the New York Police Department, Homicide Squad on January 10, 2001.  Id.

"On January 11, 2001, New York State declined prosecution for Homicide and the warrant for Absconding was never executed." Id. ¶ 9.  Petitioner was transferred to federal custody on January 12, 2001 to face charges of conspiracy to distribute narcotics, intentional murder while engaged in a major narcotics conspiracy and murder in the course of using and carrying a firearm.  Id.; see also United States v. Sanchez, No. 1:01-CR-00074-02 (S.D.N.Y.).  Petitioner was sentenced on June 15, 2004 to a 360-month sentence to be followed by a 10 years of supervised release.  Hassler Dec. ¶ 10; ECF No. 6-5 at 15.  "The federal sentence computation was computed and audited, commencing on June 15, 2004, the date of imposition, with a projected release date of June 23, 2035."  Hassler Dec. ¶ 12. NYDOC "placed a detainer with the Bureau of Prisons for violation of parole, absconding on August 24, 2004, after the disposition of the federal charges."  Id. ¶ 13; see also ECF No. 6-5 at 21-22.

3

Petitioner argues that he "has remained and maintained in the custody of the BOP without being transferred back to his 'primary custodian,' the [NYDOC] for continuation of serving his non-negotiable parolable [sic] life sentence." ECF No. 1-3 at 4. He seeks an order directing the BOP to either transfer him back to NYDOC custody or to designate a state prison as the place of imprisonment.[1]

The United States opposes the petition. ECF No. 6. It argues Petitioner failed to exhaust his administrative remedies, or in the alternative, that the petition otherwise does not challenge the fact or duration of Petitioner's confinement.

II. STANDARD OF REVIEW

Title 28, Section 2243 of the United States Code provides in relevant part as follows:

> A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless

---

[1] Alternatively, Petitioner asks the Court to consider his claim under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) for interfering with his access to the courts by refusing to answer his administrative remedies. ECF No. 1-3 at 2. The BOP responded to Petitioner's administrative grievance on September 29, 2021, ECF No. 7 at 4, but it would be futile to create a separate civil rights action because the Supreme Court has never recognized a Bivens remedy for this kind of claim. See Ziglar v. Abbasi, 137 S. Ct. 1843 (2017). Moreover, "[p]risoners do not have a constitutional right to prison grievance procedures." Heleva v. Kramer, 214 F. App'x 244, 247 (3d Cir. 2007).

> it appears from the application that the applicant or person detained is not entitled thereto.

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition must be construed liberally. See Hunterson v. DiSabato, 308 F.3d 236, 243 (3d Cir. 2002).

III. DISCUSSION

A. Failure to Exhaust

Respondent argues the § 2241 petition should be dismissed because Petitioner failed to exhaust the BOP's administrative remedy procedures. "Although there is no statutory exhaustion requirement attached to § 2241, we have consistently applied an exhaustion requirement to claims brought under § 2241." Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000). "We require exhaustion for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 761-62 (3d Cir. 1996).

The BOP's administrative remedy system has three tiers allowing "an inmate to seek formal review of an issue relating

to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). Petitioner filed a BP-9 request for administrative remedy with the Warden of FCI Fairton on June 10, 2020. ECF No. 6-3 at 10. The United State conceded that the Warden did not respond to the BP-9 within the 40-day response time but asserts that Petitioner "could have considered the absence of a response as the denial at the BP-9 level" and did "not file[] an appeal with the Regional Office." Declaration of Robin Summers ("Summers Dec."), ECF No. 6-2 ¶ 5. See also 28 C.F.R. § 542.18 (giving warden 20 days plus one 20-day extension to respond to BP-9s and stating that "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level.").

Petitioner filed motions to supplement the record after the United States filed its answer. ECF Nos. 7-9.² According to the submitted documents, the Warden of FCI Fairton denied Petitioner's BP-9 on September 29, 2021. ECF No. 7 at 4. Petitioner submitted a BP-10 appeal to the BOP Northeast Regional Office, the second step of the administrative remedy process, on October 5, 2021. Id. at 5. The Regional Office denied the appeal on December 10, 2021. ECF No. 8 at 3.

---

² The United States did not file any opposition to the motions.

Petitioner filed an appeal with the BOP's General Counsel on January 3, 2022. ECF No. 8 at 4. The General Counsel denied the appeal on March 18, 2022. ECF No. 9 at 4. "Appeal to the General Counsel is the final administrative appeal." 28 C.F.R. § 542.15(a).

"If a petitioner has failed to exhaust his administrative remedies prior to filing a § 2241 petition, the District Court may in its discretion either excuse the faulty exhaustion and reach the merits, or require the petitioner to exhaust his administrative remedies before proceeding in court." Ridley v. Smith, 179 F. App'x 109, 111 (3d Cir. 2006) (internal quotation marks omitted). Petitioner did not exhaust his administrative remedies before filing his habeas corpus action on August 31, 2020, but he has now completed the exhaustion process. ECF No. 9. The Court will exercise its discretion to consider the merits of Petitioner's "primary custody" argument. However, the Court will not excuse the failure to exhaust any argument that the BOP abused its discretion under 18 U.S.C. § 3621(b).

"Section 3621(b) gives the [BOP] the authority to order that a prisoner serve his federal sentence in any suitable prison facility 'whether maintained by the Federal Government or otherwise.' The [BOP] may therefore order that a prisoner serve his federal sentence in a state prison." Setser v. United States, 566 U.S. 231, 235 (2012) (emphasis in original). The

7

statute sets out a non-exhaustive list of factors for the BOP to consider when making this determination, including but not limited to "the resources of the facility contemplated," "the nature and circumstances of the offense," and "the history and characteristics of the prisoner."  18 U.S.C. § 3621(b).  Petitioner never asked the BOP to consider placement under § 3621(b); he only argued that his "primary custody lies with the [NYDOC]."  ECF No. 6-3 at 10.  Likewise, his appeals to the Northeast Regional Director and General Counsel only invoked the primary custody doctrine, not § 3621(b).  ECF No. 7 at 5; ECF No. 8 at 4.

Petitioner did not give the BOP the opportunity to exercise its discretion under § 3621(b) in the first instance through his administrative remedies, which deprived the BOP of the chance "to develop a factual record and apply its expertise" in a manner that would "facilitate[] judicial review . . . ." Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Accordingly, the Court will dismiss this claim for failure to exhaust.

B.  Primary Custody

Petitioner argues the BOP must transfer him to the NYDOC under the "primary custody" doctrine.  "Where a defendant faces prosecution by both state and federal authorities, the 'primary custody' doctrine determines where and how the defendant will

8

serve any resulting sentence of incarceration." Taccetta v. Fed. Bureau of Prisons, 606 F. App'x 661, 663 (3d Cir. 2015). "The basic principle is that the first sovereign to arrest the defendant is entitled to have the defendant serve that sovereign's sentence before one imposed by another sovereign." Id. (citing Bowman v. Wilson, 672 F.2d 1145, 1153 (3d Cir. 1982)).

As an initial matter, Petitioner lacks standing under Article III to invoke the primary custody doctrine in this manner. "The rule of law that governs which of two authorities has priority of jurisdiction over a person in legal custody contemplates avoiding conflict among competing jurisdictions in our federal system." Bowman v. Wilson, 672 F.2d 1145, 1153 (3d Cir. 1982). "Those who assert jurisdiction, not those in their custody, are the beneficiaries of the rule allocating priority of prosecution to the sovereignty which first takes custody of a person." Id. See also United States v. McCrary, 220 F.3d 868, 870 (8th Cir. 2000) ("The exercise of jurisdiction over him is solely a question to be determined between those two sovereignties, and is not subject to attack by the prisoner. . . . We do not think that defendant has any standing to question this decision."); Rawls v. United States, 166 F.2d 532, 534 (10th Cir. 1948) ("The sovereign alone may raise the objections to the interference with its rights. . . . If [the accused] has

9

violated the laws of both sovereigns, he is subject to prosecution by both, and he may not complain of or choose the manner or order in which each sovereign proceeds against him so long as his constitutional rights in each trial are not violated."); Harris v. Bureau of Prisons (BOP) Fed., 787 F. Supp. 2d 350, 357 (W.D. Pa. 2011) ("Any dispute over whether an inmate should be in the primary custody of either the state or federal government is a matter to be agreed upon between the two sovereigns; it is not subject to attack by the prisoner."). Petitioner "thus lacks standing to challenge the sequence in which he was required to serve his sentences." Smart v. Kirby, 436 F. App'x 64, 66 (3d Cir. 2011).[3]

Petitioner's claim would fail on its merits even if he has standing to make this argument.[4] See Moody v. Holman, 887 F.3d

---

[3] In Jones v. Warden McKean FCI, a Third Circuit panel concluded the petitioner had Article III standing to raise the primary-custody question under § 2241 because the defendant did "not wish to challenge the explicit exercise of intersovereign comity, but rather intends to raise an issue about the results flowing therefrom." 714 F. App'x 166, 168 n.6 (3d Cir. 2017). In addition to being unpublished and non-precedential, Jones is distinguishable from Petitioner's claim because Petitioner argues he must be transferred to NYDOC custody because the United States improperly exercised its jurisdiction.

[4] Section 2241 "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence." Coady v. Vaughn, 251 F.3d 480, 485 (3d Cir. 2001). The United States argues Petitioner's claim is improperly brought under § 2241 because "[a]n inmate's request for a 'garden variety' prison transfer does not implicate the fact or during [sic] of his confinement and

10

1281 (11th Cir. 2018) (concluding defendant had standing to challenge state's exercise of custody but failed to state a claim). The primary custody doctrine "does not destroy the jurisdiction of the other sovereign over the defendant; it simply requires it to postpone its exercise of jurisdiction until the first sovereign is through with him or until the first sovereign agrees to temporarily or permanently relinquish custody." Weekes v. Fleming, 301 F.3d 1175, 1180 (10th Cir. 2002). The Southern District of New York properly exercised jurisdiction over Petitioner's federal criminal charges even if Petitioner was in New York's primary custody at the time. See United States v. Johnson, 932 F.3d 965, 968 (6th Cir. 2019) ("Even if Florida retained its primary jurisdiction over Johnson, this would not deprive the federal district court of jurisdiction over his case."). The Southern District had the authority to order the BOP to take custody of Petitioner, and the primary custody doctrine does not invalidate the BOP's authority to hold Petitioner.

In theory, the primary custody doctrine impacts the calculation of Petitioner's federal sentence. See Maday v.

---

therefore does not fall within the limited category of claims he can raise in a habeas petition under § 2241." ECF No. 6 at 12. Assuming arguendo Petitioner has the required standing, his argument could be liberally construed as a challenge to the "fact" of his confinement by the BOP.

Pfister, 727 F. App'x 209, 210 (7th Cir. 2018)("[T]he primary-custody doctrine does not restrict where a federal inmate serves his sentence, only when that sentence begins."). However, it has no practical effect under the facts and arguments raised in the petition.

"In calculating a federal sentence, the BOP first determines when the sentence commenced and then determines whether the prisoner is entitled to any credits toward his sentence." Blood v. Bledsoe, 648 F.3d 203, 207 (3d Cir. 2011). "A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). Here, the BOP has already calculated Petitioner's federal sentence "as commencing on June 15, 2004, the date of his federal sentencing and the earliest possible date it could have commenced." ECF No. 6 at 15; Hassler Dec. ¶ 12. See also Howard v. Longley, 532 F. App'x 116, 117 (3d Cir. 2013) ("[A] sentence cannot start earlier than the day it was imposed."). Petitioner has already been given the benefit of starting his federal sentence at the earliest possible moment, and the primary custody doctrine does not change the start date.

"Mr. Sanchez received prior custody credit from January 9, 2001 (the date of arrest), through June 14, 2004 (the day before the federal sentence was imposed)." Hassler Dec. ¶ 12. The BOP would not be able to apply this prior custody credit to Petitioner's federal sentence if Petitioner was in the primary custody of New York between January 9, 2001 and June 14, 2004. 18 U.S.C. § 3585(b) (prohibiting prior custody credit for time that has been credited against another sentence). However, New York relinquished its custody of Petitioner when it declined to prosecute him. Hassler Dec. ¶ 9; Taccetta v. Fed. Bureau of Prisons, 606 F. App'x 661, 663 (3d Cir. 2015) ("A sovereign can 'relinquish' primary custody by releasing the defendant on bail, dismissing the charges, or granting parole."). Thereafter, Petitioner was in the United States' custody. The BOP properly calculated Petitioner's sentence under § 3585 on the facts before the Court.

IV. CONCLUSION

For the foregoing reasons, the motions to supplement the record will be granted. The habeas petition will be dismissed in part for failure to exhaust administrative remedies and denied in part.

An appropriate order will be entered.

Dated: May 11, 2022                    s/ Noel L. Hillman
At Camden, New Jersey                  NOEL L. HILLMAN, U.S.D.J.